UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TONY E. EMERY,

        Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE & BUREAU OF ALCOHOL,
TOBACCO, FIREARMS AND
EXPLOSIVES,

        Defendants.

Civil Action No. 19-3519 (JMC)

## MEMORANDUM OPINION

Pro se Plaintiff Tony E. Emery brought this action against the United States Department of Justice (DOJ) and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for failing to provide him records in response to his requests for information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.[1] The DOJ moved for summary judgment,[2] ECF 26, and Emery filed a response, ECF 29. Because the ATF conducted an adequate search for Emery's records and has released all non-exempt, reasonably segregable records to him, the Court **GRANTS** the DOJ's Motion for Summary Judgment. Based on that

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] Although Emery named both the DOJ and the ATF as defendants in this case, the DOJ identifies itself as the only defendant in this action and the ATF as its "component." ECF 26 at 1. The Court notes that other judges in this jurisdiction have treated the DOJ and the ATF as separate defendants in FOIA cases. *See, e.g.*, *Reep v. U.S. Dep't of Just.*, 302 F. Supp. 3d 174, 181–82 (D.D.C. 2018), *aff'd*, No. 18-5132, 2018 WL 6721099 (D.C. Cir. Dec. 18, 2018). Regardless, it is unnecessary for this Court to determine if the ATF is a proper defendant because the Court's findings and conclusions warrant dismissal of Emery's case whether or not the ATF is included as a second defendant.

disposition, the Court also **DENIES** Emery's Motion to Assess Court Costs to the Respondents. ECF 23.

## I. BACKGROUND

On August 29, 2019, Tony E. Emery requested records about himself from the ATF. ECF 18-2 at 10. Emery's request sought "all records, documents, and information [in ATF] files pertaining to [him] or mentioning [his] name" in "the Western District of Missouri and the Eastern District of Missouri and in [the ATF's] Washington DC headquarters." *Id.* On October 11, 2019, the ATF replied to Emery by letter, notifying him that "a search has been conducted and, based on the information you provided to us, we were not able to locate any responsive records subject to the Freedom of Information Act." *Id.* at 15. The ATF's letter also advised Emery that he had the right to appeal its determination to the DOJ's Office of Information Policy, and included the instructions, the applicable deadline, and other pertinent information necessary for him to do so. *Id.* at 15–16.

Emery did not file an administrative appeal. *Id.* at 2. Instead, in November 2019, Emery initiated this action alleging that the DOJ and the ATF violated FOIA and the Privacy Act by failing to produce records in response to his request. ECF 1. More than one year later, while the lawsuit was still pending, the ATF learned that, despite its prior understanding that all hard copies of the responsive documents had been destroyed, there were nearly 600 pages of responsive, hard-copy documents in its Kansas City Federal Record Center (FRC). ECF 26-2 at 3. The ATF processed those records and mailed the nonexempt portions to Emery in March 2021. *Id.* at 4.

Approximately two months after that disclosure, the DOJ filed its Second Motion for Summary Judgment.[3] ECF 26. Because Emery is pro se, the Court issued an order to advise him of his obligation to respond to the DOJ's motion by the Court-imposed deadline, which was January 18, 2022. ECF 28. The Court's order set forth the requirements of Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), warning Emery that the Court could accept the DOJ's factual assertions as true if Emery did not dispute them with his own affidavits and evidence. *Id.* at 2–3. Emery filed a Response on February 1, 2022.[4] ECF 29.

## II. LEGAL STANDARDS

### A. Summary Judgment

FOIA cases are typically decided at summary judgment. *See Laverpool v. Dep't of Hous. & Urban Dev.*, 315 F. Supp. 3d 388, 390 (D.D.C. 2018). A court will grant a summary judgment motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). To satisfy that burden, the "agency must prove that each document that falls within the class requested either has been produced, is unidentifiable[,] or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). The court may accept as true any uncontested factual assertions in the moving party's affidavits or attachments, provided that that the nonmoving

---

[3] Defendants' first Motion for Summary Judgment was filed on January 28, 2021. ECF 18. That motion was withdrawn after the discovery of the responsive records. ECF 20

[4] Emery's Response to the Second Motion for Summary Judgment was filed two weeks after the deadline, without a formal motion to late file. ECF 29. In general, "post-deadline extensions may be granted only for cause shown and upon motion." *Smith v. District of Columbia*, 430 F.3d 450, 456 (D.C. Cir. 2005). Nonetheless, Plaintiff, who is pro se and incarcerated, did provide a reasonable explanation for the delay. ECF 29 at 1. Moreover, the delay was short, there is no evidence of bad faith, and there is no prejudice to Defendants. Therefore, the Court chooses to consider Emery's Response. *Cf. Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001).

party (and in particular a pro se nonmoving party) has "fair notice of the requirements of the summary judgment rule" and the "consequences of failing to respond" to a summary judgment motion, as well as a "reasonable opportunity to submit" their own evidence in response. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

### B. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Because FOIA's exhaustion requirement is "not a jurisdictional bar to judicial review," an agency's argument that a FOIA requester has failed to exhaust their administrative remedies is generally analyzed under Rule 12(b)(6). *Tereshchuk v. Bureau of Prisons*, 851 F. Supp. 2d 157, 161 n.5 (D.D.C. 2012); *see also Hidalgo*, 344 F.3d at 1260 (remanding with instructions to dismiss the complaint under Rule 12(b)(6) for failure to exhaust administrative remedies). That said, if the moving party's motion references matters outside the pleadings, as does the DOJ's motion in this case, a court must treat the motion as one for summary judgment. *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

### C. Adequacy of Search

Under both FOIA and the Privacy Act, agencies have "an obligation . . . to conduct an adequate search for responsive records."[5] *Edelman v. SEC*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016). "An inadequate search for records constitutes an improper withholding" under the statute. *Schoenman v. FBI*, 764 F. Supp. 2d 40, 45 (D.D.C. 2011). The adequacy of a search is

---

[5] The adequacy of the search for both FOIA and Privacy Act requests are analyzed under the same standard. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

determined not by its results, but by the means used to conduct it. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). In assessing the adequacy of an agency's search, "the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Mobley v. CIA*, 806 F.3d 568, 580–81 (D.C. Cir. 2015) (further stating that such affidavits are "accorded a presumption of good faith").

### D. Adequacy of Disclosures

Although "FOIA calls for broad disclosure of Government records," *Porup v. CIA*, 997 F.3d 1224, 1235 (D.C. Cir. 2021), an agency may withhold responsive records under any of the nine exemptions defined in 5 U.S.C. § 552(b). *Id.* To withhold a record, an agency must demonstrate both (1) "that the record falls within a FOIA exemption," and (2) "that the agency reasonably foresees that disclosure would harm an interest protected by the exemption." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). An agency can show an exemption applies by "submitting affidavits that [1] describe the justifications for nondisclosure with reasonably specific detail, [2] demonstrate that the information withheld logically falls within the claimed exemption," and (3) which are not contradicted by the record or by evidence of bad faith. *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

Even if some information in a responsive record is exempt from disclosure, any "reasonably segregable information" must be disclosed following redaction of the information that is exempt. 5 U.S.C. § 552(b). Non-exempt information is not reasonably segregable if it is "inextricably intertwined with [the] exempt portions" of a document. *Johnson v. Exec. Off. for U.S. Att'ys.*, 310 F. 3d 771, 776 (D.C. Cir. 2002). An agency may show it has satisfied its disclosure

obligations by "(1) providing a Vaughn index[6] that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material." *Nat'l Sec. Couns. v. CIA,* 960 F. Supp. 2d 101, 207 (D.D.C. 2013). Finally, agencies are entitled to a presumption that they disclosed all reasonably segregable material. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

## III. ANALYSIS

The Court finds the DOJ's argument that Emery failed to exhaust his administrative remedies is moot, and therefore declines to grant the Motion of Summary Judgment on that basis. Instead, the Court grants the DOJ's Motion on the alternative ground that the ATF fully complied with the requirements of FOIA and the Privacy Act. Next, the Court denies Emery's Motion to Assess Court Costs because he has not "substantially prevailed" in this litigation.

### A. The DOJ's argument that Emery failed to exhaust his administrative remedies is moot because the ATF's initial decision was overtaken by new and different in-court disclosures.

FOIA requires a requester to exhaust their administrative remedies regarding an "adverse determination made by the agency within its statutorily required administrative process." *Bayala v. U.S. Dep't of Homeland Sec., Off. of Gen. Couns.*, 827 F.3d 31, 36 (D.C. Cir. 2016) (citing 5 U.S.C. § 552(a)(6)(A)(i) & (ii)). However, a requester cannot be compelled to administratively exhaust an agency decision that is "the byproduct of litigation" (as opposed to "the pre-litigation administrative decision-making process"). *Id.* Nor can a requester be compelled to administratively

---

[6] A Vaughn index is a standardized document "created by an agency to assist courts and FOIA requesters when the agency claims that responsive documents are exempt from disclosure." *Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 190 (D.C. Cir. 2007). The index is meant to "describe with reasonable specificity the material withheld" and justify why each responsive document is exempt from disclosure under FOIA. *See King v. U.S. Dep't of Just.*, 830 F.2d 210, 221 (D.C. Cir. 1987). When creating a Vaughn index, "[a] withholding agency must describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information." *Id.* at 223–24 (emphasis omitted).

exhaust an agency decision that "has been overtaken by new and different in-court disclosures and explanations." *Id.* Accordingly, when an agency contradicts its administrative decision by making new, *sua sponte* disclosures after the commencement of FOIA litigation, any motion to dismiss for failure to exhaust administrative remedies—even where that motion would have been meritorious prior to the additional disclosures—becomes moot. *See id.* at 35.

Such is the case here. The ATF initially claimed that it conducted an adequate search of the places it would reasonably expect to find the requested records, but was "not able to locate any responsive records" to Emery's request. ECF 18-2 at 15. Then, after Emery filed suit, the ATF discovered, processed, and released new documents. ECF 26-2 at 3–4. In doing so, the ATF implicitly abandoned its original position that such documents could not be located, thus "render[ing] the propriety of the original agency decision—and any administrative challenges to it—an entirely academic question." *Bayala*, 827 F.3d at 35. The DOJ's Second Motion for Summary Judgment, arguing that the case should be dismissed because Emery failed to exhaust the administrative appeals process, was filed after the disclosure of the additional records identified by the ATF. ECF 26. But by that point, it was too late. Any valid argument that Emery had failed to exhaust his administrative remedies regarding the ATF's original decision had become moot. Therefore, the DOJ's Motion for Summary Judgment cannot be granted on the grounds that Emery failed to exhaust his administrative remedies.

**B. The DOJ's Motion for Summary Judgment is granted because the ATF discharged its obligations under FOIA and the Privacy Act.**

Having rejected the DOJ's argument that Emery failed to exhaust his administrative remedies, the Court instead grants summary judgment to Defendants on the grounds that the ATF's search and disclosure of records were adequate.

7

### 1. The ATF's search was adequate.

In support of its claim that it conducted an adequate search, the DOJ submitted a sworn declaration from Adam C. Siple, Chief of the Information and Privacy Governance Division of the ATF. ECF 26-2. That declaration incorporates by reference an earlier declaration, also by Siple, filed in conjunction with the ATF's First Motion for Summary Judgment. ECF 18-2. Together, the Siple declarations describe both the pre-litigation search for Emery's records, and the post-complaint discovery and processing of the responsive records at the Kansas City FRC. With regard to the initial search, Siple's first declaration states that the ATF conducted a search of its "N-Force" system (the ATF's "official case file of record for documenting investigative activity and information"), ECG 18-2 at 4, the Treasury Enforcement Communications System (TECS) (an "older, legacy criminal records system"), *id.* at 6, and the ATF's "entire Microsoft email exchange," *id.* at 9. Siple averred that "all files that are reasonably likely to contain responsive materials (if such records existed) were searched," but no responsive documents were found. *Id.* at 3. He further stated that, given the age of Emery's case, any hard copies at the Kansas City Field Division "would have . . . been destroyed as part of the records schedule." *Id.* at 8.

Siple's second declaration addresses the ATF's subsequent discovery of responsive records. ECF 26-2. That declaration states that, although any hard copies of Siple's records should have been destroyed "in accordance with ATF records and destruction policies," *id.* at 2–3, the ATF became aware (two days after it filed its initial Motion for Summary Judgment) that responsive records might still be located "within the archives at the Kansas City FRC," *id.* at 3. Siple averred that the records had not been discovered in the first instance because the FRC had not returned phone calls from Siple's team, and in any event Siple's team did not expect the FRC

8

to have any responsive records in its possession. *Id.* The newly discovered records were processed and the nonexempt portions sent to Emery by mail. *Id.* at 3–4.

Emery does not contest either of Siple's declarations. *See generally* ECF 29. In fact, it is not entirely clear that Emery opposes the DOJ's Motion for Summary Judgment at all. His Response includes a copy of a signed form, dated September 21, 2021, on which Emery checked a box next to the following text: "Please do not search any longer. I understand that I am entitled to the first 100 pages free. If you have found releasable documents, send me the free documents and close my case." ECF 29-1. Emery's Response consists exclusively of (1) a statement that he had only checked the box due to "time restraints and cost," and (2) and explanation as to why his Response was filed after the deadline. ECF 29 at 1. Emery does not explain if he wants the Court to set the signed form aside. *Id.* Nor does he take issue with the manner in which the ATF performed its search. *Id.* Accordingly, because Emery was given explicit notice of the requirements of the summary judgment standard and the consequences of failing to respond with evidence of his own, ECF 28, the Court treats the facts set forth in Siple's declarations as conceded. *See Neal*, 963 F.2d at 456.

In responding to a FOIA request, an agency is required only "to conduct a search reasonably calculated to uncover all relevant documents." *Porup*, 997 F.3d at 1237. An agency can show that it has satisfied that standard "by providing a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched." *Id.* The Siple affidavits, taken together, more than satisfy that requirement. The first affidavit describes in some detail the nature of the locations that were searched, as well as the tools used to locate responsive records in those locations. ECF 18-2 at 4–9. In that affidavit, Siple avers that "[t]here are no other record systems used or maintained by ATF

that would be likely to have information concerning a specific person, like Mr. Emery, who was the subject of a federal criminal investigation of violent crime," and that "[a]ccordingly, all files that are reasonably likely to contain responsive materials (if such records existed) were searched." *Id.* at 3. Siple's second affidavit explains why the hard copies, which the ATF reasonably believed to have been destroyed, were not discovered until later. ECF 26-2 at 3–4. Those sworn statements are sufficient to carry the DOJ's burden as to its search terms and methodology. Accordingly, the Court agrees with the DOJ that the search for records responsive to Emery's request was adequate.

### 2. The ATF's disclosure of non-exempt records was adequate.

At this point, the DOJ's arguments with regard to the Privacy Act and FOIA diverge. Regarding the Privacy Act, the DOJ argues that the ATF is exempt from any requirement to disclose "the contents of [its] criminal investigation file" under that statute. ECF 26 at 8. Regarding FOIA, the DOJ invokes the following exemptions to justify the records that were withheld by the ATF: 3 (records exempt by another statute), 5 (inter- or intra-agency memorandums or letters that would be unavailable in litigation), 6 (personal privacy), 7(C) (personal privacy in law enforcement records), and 7(E) (techniques and procedures). The DOJ further contends that the ATF released all reasonably segregable portions of those records that contained exempt information.

In evaluating whether the ATF's disclosures were adequate under the Privacy Act and FOIA, the Court again assumes the truth of the uncontested factual assertions in the Siple declarations, ECF 18-2 and ECF 26-2. *See Neal*, 963 F.2d at 456. The Court concludes that the ATF satisfied the disclosure requirements of both the Privacy Act and FOIA.

a. The Privacy Act

As a general matter, "the Privacy Act grants individuals the right to access agency records that pertain to them." *Majid v. FBI*, 245 F. Supp. 3d 63, 69 (D.D.C. 2017). However, the statute explicitly allows law enforcement agencies to "promulgate rules to exempt criminal records systems from these individual access . . . provisions, if the records contain information compiled for the purpose of a criminal investigation." *Id.* at 69. Such records include "reports of informants and investigators, and [those] associated with an identifiable individual." *Id.* at 69–70 (quoting 5 U.S.C. § 552a(j)(2)(B)). The ATF has exercised that authority to exempt records from its criminal investigations from the individual access provisions of the Privacy Act. 28 C.F.R. § 16.106. The ATF is a law enforcement agency that compiled the responsive records in this case in the course of a criminal investigation. ECF 26-2 at 2. Emery does not contest that fact. *See* ECF 29. Therefore, the Privacy Act does not require the ATF to disclose any of the responsive records in this case.

b. FOIA Exemption 3

FOIA Exemption 3 provides that FOIA's disclosure requirements do not apply to "matters that are specifically exempted from disclosure by another statute, if the statute (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Labow v. Dep't of Just.*, 831 F.3d 523, 527 (D.C. Cir. 2016). One such statute is Federal Rule of Criminal Procedure 6(e), which "bars disclosure of matters occurring before a grand jury" if such information would "reveal something about the grand jury's identity, investigation, or deliberation." *Id.* at 529.

Here, the ATF cited Exemption 3 to withhold one page of grand jury material: "a draft grand jury indictment" for a single charge, "presented for the grand jury's consideration in the

11

government's efforts to prosecute [Emery] for federal crimes." ECF 26-2 at 10. Siple's declaration states that because the indictment was in draft form, its disclosure would reveal information about the grand jury's deliberations. *Id.* at 10. The ATF is a law enforcement agency that compiled the responsive records in the course of a criminal investigation. *Id.* at 2. Emery does not contest these facts. *See* ECF 29. Thus, the Court finds that the ATF properly invoked FOIA Exemption 3.

    c.  FOIA Exemption 5

FOIA's Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Exemption 5 'incorporates . . . the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). The attorney's work product privilege applies to any document that "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just.*, 844 F.3d 246, 250 (D.C. Cir. 2016). For the privilege to apply, "the attorney who created the document must have had a subjective belief that litigation was a real possibility, and that subjective belief must have been objectively reasonable." *Id.* The deliberative process privilege "protects debate and candid consideration of alternatives within an agency." *Machado Amadis*, 971 F.3d at 370. "To fall within the privilege, a document must be [both] predecisional and deliberative." *Id.*

Here, the ATF cited Exemption 5 to withhold a seventeen-page memorandum that was "prepared by an Assistant United States Attorney and is addressed to a supervisory prosecutor with decision-making authority within the United States Attorney's Office for the Western District of Missouri." ECF 26-2 at 10–11. Siple's declaration states that the document includes analysis of the facts of Emery's case and makes recommendations with regard to Emery's prosecution. *Id.* at 11. As described by Siple, the memorandum was privileged both as attorney work product

12

(prepared in advance of litigation) and under the deliberative process privilege (because it made recommendations prior to the decision whether to prosecute Emery).[7] Emery does not contest these facts. *See* ECF 29. Thus, the Court finds that the ATF properly invoked FOIA Exemption 5.

    d.   FOIA Exemptions 6 and 7(C)

FOIA Exemption 6 provides that the disclosure requirements of FOIA do not apply to "personnel and medical files and similar files[8] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C), more specifically, exempts from disclosure "records or information *compiled for law enforcement purposes*" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (emphasis added). Each exception requires the court to balance the privacy interests of the affected individuals against the public interest served by disclosure. *See U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 496 n.6 (1994). The Court finds that the case law supports the ATF's use of Exemptions 6 and 7(C).

Here, the ATF, citing Exemptions 6 and 7(C), withheld individual names, including handwritten signatures or initials; phone numbers; residential addresses, or descriptive information that might be linked to a person's home address; badge numbers of ATF Special Agents or other non-senior law enforcement officials; the serial numbers of firearms (along with other information

---

[7] FOIA Exemption 5 contains a proviso that "the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5). Here, Emery made his request in 2019 for documents relating to a 1997 conviction. ECF 18-2 at 2. The ATF does not specify, either via declaration or in its Vaughn index, what year the memo in question was generated. *See* ECF 26-2 at 10–11, 162–63. The Court has no reason to believe that the document was prepared prior to 1994. However, that question is ultimately immaterial because the memorandum would be exempt under the work product privilege regardless.

[8] Despite its use of the phrase "personnel and medical files and similar files," the applicability of Exemption 6 does not "turn upon the label of the file which contains damaging information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601 (1982). Exemption 6 also exempts the personal information contained in any non-personnel or medical file—such as names, addresses, and social security numbers—if the release of that information would threaten the individual's privacy. *See Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 391 (D.C. Cir. 1987).

that could be linked to the identity of the owner of the firearm); and records that pertained to any specific person other than Emery that were pulled from the TECS or National Instant Background Check System. ECF 26-2 at 7. According to the second Siple declaration, the ATF withheld the names and identifying information of those individuals because, after independently reviewing each piece of information, the ATF determined that the disclosure of the information "would shed little, if any, light on the functioning of government" while at the same time constituting an unwarranted breach of privacy, particularly given the embarrassment or harassment that might result if it were generally known that one was associated with a federal criminal investigation. *Id.* at 8. Emery provides no reason why the public interest in disclosure outweighs the ATF's asserted interest in protecting the safety and anonymity of the third parties identified in the records. *See* ECF 29. Thus, the Court finds that the ATF properly invoked Exemptions 6 and 7(C).

    e.  FOIA Exemption 7(E)

FOIA Exemption 7(E) provides that the disclosure requirements of FOIA do not apply to "records or information compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) requires only that the agency "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

Again, the ATF is a law enforcement agency that compiled the responsive records in the course of a criminal investigation. ECF 26-2 at 2. The ATF invoked Exemption 7(E) to protect internal law enforcement codes relating to the TECS law enforcement database; internal standardized information used to assess risk prior to the execution of a search warrant; and

information within "a prosecution memorandum pertaining to the precise way certain undercover efforts and clandestine evidence collection techniques were used to advance the investigation of [Emery] and others." *Id.* at 8, 10. The ATF concluded that, if publicly known, each of those three types of information could potentially be used by criminals to circumvent or evade law enforcement techniques. *Id.* at 8. Emery does not contest any of these facts. *See* ECF 29. Accordingly, the Court concludes that the ATF properly invoked Exemption 7(E).

    f. Segregability

FOIA requires that, even if "some materials are exempt from disclosure, any reasonably segregable information from those documents must be disclosed after redaction of the exempt information[,] unless the exempt portions are inextricably intertwined with exempt portions." *Johnson*, 310 F. 3d at 776. An agency may show that it has complied with this requirement by "(1) providing a Vaughn index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material." *Nat'l Sec. Couns.,* 960 F. Supp. 2d at 207. The ATF has successfully met that burden here by submitting a Vaughn index, ECF 26-2 at 17–282, as well as a sworn declaration that it "carefully reviewed the responsive records on a line-by-line and page-by-page basis to identify reasonably segregable, non-exempt information" and "determined that there is no additional, meaningful, nonexempt information that may be reasonably segregated and released without disclosing information that warrants protection under a FOIA exemption." *Id.* at 11–12. Emery has offered no evidence to contradict that declaration, to show bad faith on the part of the ATF, or to rebut the presumption that the agency disclosed all reasonably segregable material. *See Sussman*, 494 F.3d at 1117. Accordingly, the Court concludes that the ATF released all reasonably

non-segregable information from the responsive records and grants the DOJ's Motion for Summary Judgment.

### C. Plaintiff's Motion to Assess Court Costs to Defendant is denied because Emery has not "substantially prevailed" in this litigation.

Also pending before the Court is Emery's Motion to Assess Court Costs to the Respondents. ECF 23. In that motion, Emery complains that he was "forced" to file this lawsuit to compel the DOJ to comply with his FOIA request. *Id.* at 1. In Emery's view, since the ATF produced additional documents after the commencement of this litigation, he should be treated as a de facto prevailing party and awarded reasonable costs. *Id.* The Court disagrees.

FOIA authorizes a court, at its discretion, to shift fees where a complainant has "substantially prevailed" in litigation. 5 U.S.C. § 552(a)(4)(E)(ii). A plaintiff has substantially prevailed when he has "obtained relief" in one of two ways: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* To prevail under the second prong (the so-called "catalyst theory," *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020)), a plaintiff must show that "it is more probable than not" that "the litigation caused the agency to release the documents obtained." *Id.* at 97. In addition, a plaintiff cannot recover fees under the second prong if the agency can show that its initial refusal was "correct as a matter of law." *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 525 (D.C. Cir. 2011).

Emery has not prevailed under the first prong of 5 U.S.C. § 552(a)(4)(E)(ii). On the contrary, the Court today grants summary judgment in favor of the ATF. As for the second prong, Emery offers no evidence that his initiation of the litigation caused the ATF to release the additional documents. Nor can the Court conclude that the ATF's initial refusal was incorrect as a matter of law, considering that Emery failed to exhaust his administrative remedies with regard to

that decision, thus denying the agency a full opportunity to adjudicate its refusal within the bounds of the administrative process. Therefore, Emery's Motion to Assess Court Costs is denied.

## IV. CONCLUSION

Because the ATF's search was adequate, the DOJ's Second Motion for Summary Judgment, ECF 26, is **GRANTED**. Because Emery is not the prevailing party on any legal claim, his Motion to Assess Court Costs to the Respondents, ECF 23, is **DENIED**.

A separate order accompanies this opinion.

**SO ORDERED**.

Dated:  October 31, 2022

_____
Jia M. Cobb
U.S. District Court Judge
